UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JACQUELYNN ARMSTRONG,

                Plaintiff,                              05 CV 5383 (SJ)

      - against -                             **MEMORANDUM**
                                                            **AND ORDER**

REAL ESTATE INTERNATIONAL, LTD.,
RONALD B. LOSNER, ALYSSA M. AZRAN,
KENNETH J. GLASSMAN, MERIDIAN
RESIDENTIAL CAPITAL, LLC, MORTGAGE
REGISTRATION SYSTEMS, INC., "JOHN DOE"
and "JANE DOE," the last two names being
fictitious, said parties being individuals, if any,
having or claiming an interest in, or lien upon, the
premises described herein, or having any
involvement in the fraud perpetrated on plaintiff,
and XYZ-1 CORPORATION and XYZ-2
CORPORATION, the last two names being
fictitious, it being the intention of the plaintiff to
designate any corporation or entity having a legal
interest in the premises described herein,


                            Defendants.
---------------------------------------------------------------X
A P P E A R A N C E S:

THE LAW FIRM OF HALL & HALL, LLP
57 Beach Street
Staten Island, NY 10304
By:    John Vander Neut, Esq.
Attorney for Plaintiff

SIERATZKI & GLASSMAN, LLP
475 Park Avenue South
Suite 700
New York, NY 10016
By:    Kenneth J. Glassman, Esq.
Attorney for Defendants Azran and Glassman

1

JOHNSON, Senior District Judge:

Pending before the Court is a motion by the plaintiff, Jacquelynn Armstrong, ("Plaintiff"), for a preliminary injunction:

(1) staying all proceedings on the part of the defendants ("Defendants"), their attorneys and agents and any New York City Marshal with respect to the execution of the warrant issued in the case of <u>Alyssa M. Azran v. Jacquelynn Armstrong</u>, Index No. 51999/05, Civil Court of the City of New York, County of Richmond, Housing Part, and

(2) enjoining all defendants from alienating, transferring, assigning, mortgaging or committing waste upon any interest which they or their heirs or assignees claim to have in the subject property at 38 Fiedler Avenue, Staten Island, New York 10301.

For the reasons stated below, Plaintiff's motion for a preliminary injunction is DENIED and the Temporary Restraining Order currently in effect is VACATED.

## BACKGROUND

This dispute centers around a single-family home located at 38 Fiedler Avenue in Staten Island, New York ("the Property"). Plaintiff originally purchased the Property in 1981 and obtained a mortgage on it some time thereafter. (Defendant Azran's Affidavit in Opposition ("Azran's Aff. in Opp'n") Ex. C. ¶¶ 4, 7.) Plaintiff resides at the Property with her son, whom she supports. (<u>Id.</u> ¶¶ 5-6.) In 2001, Plaintiff began to experience financial difficulties, which included becoming delinquent on her mortgage payments. (<u>Id.</u> ¶ 6.) That delinquency led to the mortgage company's attempt to foreclose on the Property. (<u>Id.</u>

2

¶ 7.) This foreclosure was eventually scheduled for October 4, 2004. (Id. ¶ 3.)

At some point in September 2004, Plaintiff received in the mail post cards from one of the defendants, Real Estate International, LTD ("REI"). (Plaintiff's Memorandum of Law and Reply Affidavit ("Pl.'s Mem. of Law and Aff.") ¶ 2, Ex. A.) Eventually, Plaintiff was able to avoid foreclosure of the Property by entering into an agreement ("the Transaction Agreement") – titled a "Contract of Sale" – with one of the defendants, Alyssa M. Azran ("Azran"). (Azran's Aff. in Opp'n Ex. A.) Another defendant, Kenneth J. Glassman, Esq. ("Glassman"), an attorney for Azran, assisted Plaintiff with the state court action necessary to prevent the foreclosure. (Pl.'s Mem. of Law and Aff. ¶ 6.)

The Transaction Agreement required Plaintiff to sell the Property to Azran for the price of $350,000. (Azran's Aff. in Opp'n Ex. A at 1.) A Rider to the Transaction Agreement provided Plaintiff with an 18-month rental lease on the Property, with the price of her monthly rent pegged to monthly mortgage payment due on the Property. (Azran's Aff. in Opp'n Ex. B.) The lease Azran provided to Plaintiff included an option for Plaintiff eventually to repurchase the Property. (Azran's Aff. in Opp'n Ex. D. ¶ 36.)

At some point during the first half of 2005, Plaintiff again faced problems meeting her monthly housing obligations. (Azran's Aff. in Opp'n Ex. G.) Eventually, Azran sought to enforce the provisions of the Transaction Agreement covering Plaintiff's failure to make timely payments by commencing a summary non-payment proceeding in New York City Civil Court, County of Richmond, Housing Part ("Housing Court"). (Compl. ¶ 23; Azran's Aff. in Opp'n ¶¶ 21-22.) In response, Plaintiff hired the Legal Aid Society

3

("Legal Aid") to represent her. (Id. ¶ 26.) A Stipulation of Settlement (the "Stipulation") was reached and signed by Glassman and a Legal Aid attorney. (Azran's Aff. in Opp'n Ex. H.)[1] The Stipulation, which authorized the issuance of an eviction warrant with respect to Plaintiff's occupancy of the Property (id. ¶ 2), was "So Ordered" by the Housing Court judge (Azran's Aff. in Opp'n Ex. H).

Plaintiff asserts that, in the event she were to be evicted, she would be homeless. (Plaintiff's Affidavit in support of her Order to Show Cause ("Pl.'s OTSC Aff.") ¶ 7). Meanwhile, Azran contends that, without the rental income owed to her by Plaintiff, Azran is unable meet her monthly obligations with respect to the Property. (Azran Aff. in Opp'n ¶ 32.)

On November 16, 2005, Plaintiff commenced this action against Defendants, seeking a declaratory judgment that the transfer of the Property's deed pursuant to the Transaction Agreement was actually an equitable mortgage and also alleging the following causes of action: (1) a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (2) a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; (3) fraud; (4) civil conspiracy to commit fraud; (5) a violation of New York State's Deceptive Practices Act, N.Y. Gen. Bus. L. § 349; (6) conversion; (7) a violation of Section 598 of the New York State Banking Law; and (8) breach of fiduciary duty.

---

[1] Plaintiff's current counsel – who is not from Legal Aid – asserted at a hearing on November 23, 2005, before this Court that Plaintiff had not authorized her Legal Aid attorney to sign the Stipulation on Plaintiff's behalf.

4

(Compl. ¶¶ 25-75.) In essence, Plaintiff claims she was defrauded out of the title to the Property. (Id. ¶ 24.)

After filing the complaint, Plaintiff applied <u>ex parte</u> on November 18, 2005 for a temporary restraining order ("TRO") staying Plaintiff's eviction and enjoining Defendants from alienating, transferring, assigning, mortgaging or committing waste upon any interest which they or their heirs or assignees claim to have in the Property. Judge Raymond J. Dearie of the United States District Court for the Eastern District of New York heard Plaintiff's application and granted the TRO staying Plaintiff's eviction pending a hearing before this Court on November 23, 2005 on an Order to Show Cause as to why the Court should not issue a preliminary injunction. At the hearing, the Court extended the TRO until it issued this decision and also to permit the parties to supplement their filings on the motion for a preliminary injunction.. Included in these supplemental filings were briefings the parties submitted, in response to an order of this Court dated December 16, 2005, on the potential applicability of the Anti-Injunction Act, 28 U.S.C. § 2283, to the request for a preliminary injunction.

## DISCUSSION

### I. Jurisdiction

Before considering the motion for a preliminary injunction on the merits, the Court must first address whether this Court has jurisdiction to consider such motion.

Notably, jurisdiction in lower federal courts is never presumed. Instead, Congress must have spoken in the affirmative with regard to an area of requested relief before a

5

federal district court may even consider a matter. In situations such as the one before the Court, namely, a plaintiff facing an adverse action in a state court and subsequently seeking to stay all or part of that action in federal court, Congress has spoken in a way that significantly limits, rather than grants or expands, federal jurisdiction.

The preliminary injunction sought here falls squarely under the scope of the Anti-Injunction Act, which bars federal courts from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Dating "back almost to the beginning of our history as a Nation," Mitchum v. Foster, 407 U.S. 225, 232 (1972), the Anti-Injunction Act's purpose "is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977) (citation omitted). In this regard, "the Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." Id. Courts, though, are to construe the three statutory exceptions narrowly. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988) (citations omitted).

Because the New York state Housing Court "So Ordered" the Stipulation before Plaintiff sought relief in federal court, the Anti-Injunction Act applies, and thus this Court cannot stay the state proceeding unless one of the three statutory exceptions applies. The

P-049

Court shall address the two potentially applicable factors.[2]

### A. *Expressly Authorized*

As mentioned, the first exception to the general prohibition in the Anti-Injunction Act is when Congress enacts a statute that provides federal courts with the authority to intervene in a state proceeding. Despite the inclusion of the words "expressly authorized" in the statute, "a federal law need not contain an express reference to [the Anti-Injunction Act] . . . [and] a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." Mitchum, 407 U.S. at 237. Importantly, though, the "Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." Id. Thus, the test "is whether an Act of Congress . . . could be given its intended scope only by the stay of a state court proceeding." Id. at 238 (citations omitted). See also Vendo Co., 433 U.S. at 632 (discussing the two-part nature of the test).

To qualify for the first exception to the Anti-Injunction Act, the equitable remedy Plaintiff ultimately seeks in this case, which is rescission of the Transaction Agreement under TILA, must be a uniquely federal one that could only be enforceable in federal court.

---

[2] The third statutory exception, "to protect or effectuate its judgments," obviously is inapplicable in this case, as that exception is intended to provide federal courts with the ability when necessary to prevent parties to a final federal judgment from attempting to undermine it by subsequently relitigating the same claim in state court. See, e.g., Huguley v. General Motors Corp., 999 F.2d 142, 145 (6th Cir. 1993) (holding that settlement agreement in previous federal class action racial discrimination suit against employer precluded employee from bringing claim in state court).

7

Rescission under TILA, though, does not qualify as one such remedy. See, e.g., Berkeley Fed. Bank & Trust, FSB v. Siegel, 247 A.D.2d 498 (N.Y. App. Div. 1998) (holding that state trial court did not abuse its discretion in conditioning mortgagor's right of rescission under TILA upon mortgagor's tender of the mortgage loan principal). Because one may bring a TILA claim seeking rescission in a state court, the "expressly authorized" exception to the Anti-Injunction Act may not be relied upon to enjoin the state eviction.

### *B. Necessary In Aid of Jurisdiction*

The second potentially applicable exception, as mentioned, is that a federal court may enjoin a state proceeding "when necessary in aid" of the federal court's jurisdiction. The scope of this exception is much narrower than the language would seem to indicate. First, the inclusion of the word "necessary" in the statute is, of course, not to be overlooked. See, e.g., Atlantic Coast Line R. Co. v. Bhd .of Locomotive Eng'rs, 398 U.S. 281, 295 (1970) (stating that "if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction). Moreover, this exception is triggered only when "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Id.

An example of this standard's application arose in Lattimore v. Nw. Coop. Homes Ass'n, No. 09 CV 0049, 1990 U.S. Dist. LEXIS (D.D.C. Mar. 26, 1990), in a factual situation somewhat similar to this one. In Lattimore, the plaintiff, who was trying to keep

8

her home, moved for a preliminary injunction to stay an eviction proceeding the defendants had commenced in the Landlord and Tenant Branch of the District of Columbia Superior Court ("D.C. Superior Court"). Id. at *1. Because the proceedings in D.C. Superior Court were commenced before the plaintiff sought injunctive relief in federal court, the Anti-Injunction Act was triggered and the only issue was whether one of the exceptions was applicable. Id. at *8.

In its discussion of the "necessary in aid of" exception, the Lattimore court applied the above-mentioned Atlantic Coast Line standard and concluded that the exception applied. Accordingly, the Lattimore court determined that it not only could enjoin the on-going eviction proceeding in the D.C. Superior Court, but also that it must do so to preserve that federal court's ability to grant, if appropriate, the relief the plaintiff had sought in her federal case. Id. at *12-14. The Lattimore court's conclusion that it must act was based on two keys facts: (1) the D.C. Superior Court had not yet concluded who was legally entitled to the property at issue; and (2) the plaintiff in that case was not permitted to raise her federal claims in D.C. Superior Court as part of the eviction proceeding. Together, these two factors meant that "[i]f the eviction is allowed to proceed, the rights to the premises will be adjudicated by the Superior Court, and [the federal district court] will be bound to adhere to that decision, even though [the state court] was not able to consider what seems to be the heart of plaintiff's case." Id. at 14.

Neither of those crucial factors exists here. First, the Housing Court in this case has already signed off on the Stipulation, which permits the warrant of eviction to issue.

9

P-049

Second, as already discussed above, claims for rescission under TILA can be brought in state court, including as a defense to an eviction claim in Housing Court. See, e.g., N.Y. Real Prop. Actions and Proceedings L. § 743 (stating that, in summary proceeding to recover possession of real property, "[t]he answer may contain *any legal or equitable defense, or counterclaim.*") (emphasis added). Even if, as Plaintiff claims, the state court would sever the eviction proceeding from an equitable mortgage defense or any counterclaims, this result does not preclude her from litigating these claims in state court. Her ability to do so, regardless of which state court would have the jurisdiction to hear her claims, undermines any argument that the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act would apply. See, e.g., Atlantic Coast Line R.R. Co., 398 U.S. at 295 (noting as part of analysis of "necessary in aid of" exception that the ability of that plaintiff to bring federal claims as well as state claims in state court made this exception inapplicable).

The absence in this case of the two factors that were so critical to the Lattimore court's decision is not trivial. In fact, these factors go to the heart of the deference for state proceedings the Anti-Injunction Act requires and elucidates why its exceptions are interpreted so narrowly. Because this Court finds that it would not be constrained in the same – and material – way the Lattimore court believed it would have been had it not enjoined the D.C. Superior Court's action, the "necessary in aid of" exception is not applicable here.

The timing of the actions in this case triggers the Anti-Injunction Act here and,

10

P-049

because none of the statute's exceptions applies, the Court is unable to disturb the eviction ordered by the state court. Accordingly, Plaintiff's request for a preliminary injunction to stay the eviction is denied.[3]

## II. The Remaining Preliminary Injunction Request

Plaintiff also moved to preliminarily enjoin Defendants from alienating, transferring, assigning, mortgaging or committing waste upon any interest which they or their heirs or assignees claim to have in the Property. To succeed on a motion for a preliminary injunction, the moving party "must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Federal Exp. Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000) (citations omitted).

Here, the Court need not consider the second part of the analysis because Plaintiff cannot satisfy the first. Plaintiff cannot show that, in the absence of this court enjoining the defendants from alienating, transferring, assigning, mortgaging or committing waste upon any interest which they or their heirs or assignees claim to have in the Property, Plaintiff

---

[3]The Court notes that at a hearing before the Court on February 9, 2006, Defendants agreed to provide Plaintiff until April 10, 2006 to find alternative housing for her and her son before Defendants would seek to enforce the eviction order.

11

will suffer irreparable harm. Neither form of relief Plaintiff seeks in this case – rescission or damages – would be precluded should defendants take any of the actions against the Property that Plaintiff seeks to prevent. First, if Plaintiff can show the Transaction Agreement was, as she alleges, actually an equitable mortgage, and that TILA covers such a transaction and would permit rescission in this case, then she "may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). Further, if Defendants were to alienate, transfer, assign, mortgage or commit waste upon the Property, such an action would not render them immune from owing Plaintiff damages were she to prevail.

Therefore, because Plaintiff has failed to demonstrate irreparable harm, her request for a preliminary injunction as to these possible actions by Defendants must also be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is DENIED in its entirety and the Temporary Restraining Order currently in place is VACATED.

SO ORDERED.

Dated: February 14, 2006
Brooklyn, NY

_____
Senior U.S.D.J.

P-049